**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| Raul Ybarra (M54621), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 3:21-cv-50191 |
| v. | ) | |
| | ) | Magistrate Judge Lisa A. Jensen |
| | ) | |
| Miller, e*t al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

It is this Court's Report and Recommendation that Defendants' request for dismissal of the complaint for failure to exhaust administrative remedies be denied. Any objection to this Report and Recommendation must be filed by August 30, 2022. Failure to object may constitute a waiver of objections on appeal. *See Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260 (7th Cir. 1989).

## BACKGROUND

On May 11, 2021, Plaintiff Raul Ybarra filed a complaint pursuant to 42 U.S.C. § 1983, raising a claim of excessive force and of inadequate medical care, both stemming from an incident that occurred at the Dixon Correctional Center in January 2020. Dkt. 1. Plaintiff subsequently filed an amended complaint, Dkt. 25, that the Court accepted for filing – allowing both claims to proceed – on January 3, 2022. Dkt. 26.

Defendants Lt. Dawn Miller and Nurse Holly Spencer answered the amended complaint and raised the affirmative defense that Plaintiff failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). *See* Dkt. 39. On July 7, 2022, the Court held a *Pavey* hearing on Plaintiff's exhaustion of his administrative remedies. *See Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008); *see also Waggoner v. Lemmon*, 778 F.3d 586, 591-92 (7th Cir. 2015) (exhaustion is a preliminary issue that should be resolved before addressing the merits of complaint). Plaintiff and Adewale Kuforiji of the Illinois Department of Corrections, Administrative Review Board ("ARB"), testified at the hearing. Defendants submitted a number of exhibits that were admitted into evidence. *See* Dkt. No. 54.

Plaintiff's amended complaint alleges that on January 31, 2020, after an incident when Plaintiff "was accused of masturbating to Warden [] Nicklaus," Lt. Miller ordered Plaintiff to strip naked, walk to the back of his cell, bend over, and "cough and squat." Dkt. 27. Lt. Miller then, with "no provocation," sprayed pepper spray through Plaintiff's chuck hole onto his anus and penis. *Id.* Plaintiff jumped up in shock and cried out in pain. Lt. Miller said, "I bet you learn from this," and walked away. *Id.* Plaintiff screamed for medical attention. Nurse H. Spencer "finally"

came. *Id.* Nurse H. Spencer refused Plaintiff's request to come out of his cell for treatment; she only looked at Plaintiff through his cell door's window. She "laugh[ed] about something with Lt. Miller." *Id.* Plaintiff was never given an opportunity to clean the burning pepper spray off his body. He asked repeatedly for a week. Plaintiff took photographs of his body.

## DISCUSSION

Defendants raise two arguments regarding exhaustion. First, they contend that Plaintiff did not properly exhaust his grievances because he did not complete his appeal to the ARB. Second, Defendant Spencer contends that Plaintiff did not adequately exhaust his grievance as to her because he did not sufficiently identify her in his grievance.

### A. Evidence at the Hearing

Plaintiff submitted an emergency grievance on the date of the incident, January 31, 2020. Dkt. 51-4. The Warden determined that the grievance should be expedited as an emergency grievance on February 4, 2022. *Id.* Plaintiff testified that at that point the sole document he received was a copy of the grievance signed by the Warden, upon which she checked the box approving emergency expedited review. He testified that he was thus directed to submit the grievance to his counselor, which he did right away on February 4, 2020. The counselor responded by telling Plaintiff to submit the grievance to the grievance officer. Plaintiff testified that he did so, and the sole document that he received back from the grievance officer was a copy of his grievance with a stamp that it had been received by the grievance office on February 11, 2022. Plaintiff then sent the stamped grievance to the ARB, which received it on February 28, 2022. The ARB returned the grievance, with the following note, which indicated that "additional information" was "required":

> The attached grievance or correspondence is being returned for the following reasons:
>
> Provide your original written Offender's Grievance, DOC 0046, including the counselor's response, if applicable.
>
> Provide a copy of the Response to Offender's Grievance, DOC 0047, including the Grievance Officer's and Chief Administrative Officer's response, to appeal: if timely.

Dkt. 51-6. Defendants' witness, Mr. Kuforiji, explained that the above documents are necessary, except in very limited circumstances, for the ARB to conduct its review. Mr. Kuforiji testified that his review of Plaintiff's file shows that the ARB never received a response from Plaintiff for these additional documents, so no review was ever conducted by the ARB.

Defendants introduced as an exhibit a copy of the Response to Offender's Grievance for Plaintiff's grievance, which was completed by a grievance officer on February 4, 2020. Dkt. 52-3. The response states that Plaintiff's claims had been submitted to the PREA compliance manager,

PREA retaliation monitor, and to Internal Affairs, and thus the grievance officer was satisfied that Plaintiff's claims were being addressed. Plaintiff, however, testified that he never received a copy of this response, possibly because he was on crisis watch at the time, and that the first time he had ever seen the response was that day at the hearing. He testified that when he received the ARB's request for additional documentation, he did submit the original, file-stamped grievance, which was the only responsive document that he possessed. Plaintiff testified that he was attempting to exhaust his administrative remedies. Finally, Plaintiff testified that he never received a copy of the facilities orientation manual because he was transferred into the facility on an emergency, crisis watch basis.

## B. Legal Standard

The Prison Litigation Reform Act ("PLRA") states: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This requirement is mandatory, and "a court may not excuse a failure to exhaust." *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). "Grievances are intended to '[allow prisons] to address [issues] before being subjected to suit, [reduce] litigation to the extent complaints are satisfactorily resolved, and [improve] litigation that does occur by leading to the preparation of a useful record.'" *Maddox v. Love*, 655 F.3d 709, 721 (7th Cir. 2011) (quoting *Jones v. Bock*, 549 U.S. 199, 219 (2007)); *see also Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013) ("The exhaustion requirement's primary purpose is to alert [] the state to the problem and invite corrective action.") (internal citation and quotation marks omitted).

To exhaust administrative remedies, an inmate must use "'all steps that the agency holds out,' and he must 'do[ ] so properly (so that the agency addresses the issues on the merits).'" *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)); *Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016). Because Plaintiff is housed in an IDOC facility, he must abide by the grievance process established by Illinois law, codified in 20 Ill. Admin. Code §§ 504.800 *et seq*. Under those provisions, a prisoner must submit a grievance to his institutional counselor "within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance." 20 Ill. Admin. Code § 504.810(a). The written grievance must "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 Ill. Admin. Code § 504.810(c). If the prisoner does not know the names of individuals who allegedly harmed him, he may still file a grievance, but he "must include as much descriptive information about the individual as possible." *Id*.

If the institutional counselor does not informally resolve a grievance, the Grievance Officer reviews the grievance, provides a written response to the prisoner, 20 Ill. Admin. Code § 504.830(a), and sends written findings and recommendations to the Chief Administrative Officer, 20 Ill. Admin. Code § 504.830(e). The Chief Administrative Officer then sends a written decision to the prisoner "within two months after receiving the written grievance, where reasonably feasible under the circumstances." 20 Ill. Admin. Code § 504.830(d). If the prisoner is

still dissatisfied, he may appeal in writing to the Director or his or her designees on the ARB within thirty days after the date of the decision. 20 Ill. Admin. Code § 504.850(a). The ARB "shall submit to the Director a written report of its findings and recommendations." 20 Ill. Admin. Code § 504.850(d). The final step is for the Director to review the ARB's findings and recommendations and make a final determination "within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances." 20 Ill. Admin. Code § 504.850(e).

An inmate may also request that a grievance be handled as an emergency by sending it directly to the warden. 20 Ill. Admin. Code § 504.840. The grievance is handled as an emergency if the warden determines that "there is a substantial risk of imminent personal injury or other serious or irreparable harm to the [inmate]." If the warden determines that the grievance does not need to be handled as an emergency, the inmate is notified in writing that he "may resubmit the grievance as non-emergent, in accordance with the standard grievance process." *Id*.

Strict adherence to the exhaustion requirements is required. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). However, "[p]rison officials may not take unfair advantage of the exhaustion requirement . . . and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Id.* To be available as an administrative remedy, the remedy must "be available in fact and not merely in form." *Schultz v. Pugh*, 728 F.3d 619, 620 (7th Cir. 2013); *accord Ross v. Blake*, 136 S.Ct. at 1858–60.

Failure to exhaust is an affirmative defense and the IDOC Defendants maintain the burden of proof of showing that Plaintiff failed to exhaust his grievances. *See Westefer v. Snyder*, 422 F.3d 570, 577 (7th Cir. 2005). Courts analyze a prisoner's exhaustion under the preponderance of the evidence standard. *See, e.g.*, *Hebron v. Baldwin*, No. 17-cv-6254, 2020 WL 757900, at *1 (N.D. Ill. Feb. 14, 2020) (citing *Jones v. Dart*, No. 14-cv-1929, 2016 WL 1555588, at *2 (N.D. Ill. Apr. 18, 2016) (collecting cases)).

**C. Analysis**

First, Defendants' argument that Plaintiff failed to exhaust his administrative remedies because he did not respond to the ARB's request for the grievance officer's response report hinges on whether Plaintiff had an available remedy.

The Court finds Plaintiff's testimony that he never knew that a grievance response form had been created for his grievance to be credible based on his demeanor and the lack of inconsistences in his testimony. Moreover, Defendants have not brought forth any evidence contradicting Plaintiff's testimony that he never received a copy of the grievance officer's response. No one from the facility was called to testify that they mailed or otherwise returned the grievance officers response to Plaintiff or even as to what the custom and practice is in the office with respect to returning such form to the offender. The Court also notes that this form, Dkt. 52-3, was first turned over to the Court the day before the hearing. Defendants filed a motion to amend their exhibit list, Dkt. 52, to include this document stating in their motion that they had just received

this document from the facility. There is no indication in the motion, nor was any testimony presented at the hearing, as to where this document was found or why it was not turned over earlier. As such, the Court finds that Defendants have not shown, by a preponderance of the evidence, that the Response to Offender Grievance form, Dkt. 52-3, was ever mailed or otherwise returned to Plaintiff.

Nor have Defendants brought forth any evidence to show that Plaintiff was ever informed what his obligations were when a grievance was handled as an emergency. Defendants did not offer testimony that the steps for following up with an emergency grievance were verbally relayed to offenders or that such steps were set forth in writing in any form. Moreover, Plaintiff testified that due to the emergency manner in which he was transferred into the facility, he did not receive an orientation handbook. Defendants have thus presented no evidence to contradict Plaintiff's testimony that he believed the file-stamped returned grievance to be the sole existing response.

As such, because Plaintiff's grievance had been deemed expedited for emergency review, Plaintiff had no reason to believe that the grievance officer was continuing to look into his grievance further when he received the file-stamped returned copy of the grievance. In other words, he had no reason to wait or make inquiries at that point rather than proceed to submit his emergency-deemed grievance to the ARB. *See, e.g., Reid v. Balota*, 962 F.3d 325, 330-331 (7th Cir. 2020) (rejecting argument that prisoner needed to allow more time for response because prisoner had no reason to believe that anyone was looking into his grievances based on responses he had already received); *Banks v. Patton*, 743 F. App'x 690, 695 (7th Cir. 2018) (unpublished) (a remedy can be unavailable when jail officials do not respond to the grievance); *Brengettcy v. Horton*, 423 F.3d 674, 678, 682 (7th Cir. 2005); *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) ("[W]e refuse to interpret the PLRA so narrowly as to . . . permit [prison officials] to exploit the exhaustion requirement through indefinite delay in responding to grievances.") (internal citation omitted). It is unclear what Defendants contend Plaintiff should have done when he received the ARB's request for a document that he reasonably believed did not exist. Plaintiff's testimony – which, again, the Court credits – shows that he promptly followed every step he was instructed to take, including responding to the ARB by providing the responsive document (another copy of the grievance) then in his possession. Therefore, the Court finds that Defendants did not meet their burden of proof to show that Plaintiff failed to exhaust his remedies that were available to him.

Next, Defendant Spencer contends that Plaintiff did not exhaust his administrative remedies as to her because she was not identified by name in his grievance. As noted above, however, the PLRA does not categorically require an inmate to name prospective defendants in his grievance – even if the prospective defendants were known to him when the grievance was written. *See, e.g.*, *Donald v. Varga*, No. 17-cv-50368, 2019 WL 2525856, at *5 (N.D. Ill. June 19, 2019). Courts have elaborated that "the purpose of [§ 504.810(c)] is to put prison officials on notice of an issue at the prison; failure to include named defendants in a grievance is 'a mere technical defect' where the inmate sufficiently describes the alleged wrongdoing to allow prison officials a fair opportunity to respond." *Id.* (citing *Kyles v. Beaugard*, No. 15-cv-8895, 2017 WL 4122708, at *8 (N.D. Ill. Sept. 18, 2017) (quoting *Maddox*, 655 F.3d at 722). Put

another way, Plaintiff need not have named Defendant Spencer in his grievance so long as his grievance sufficiently "raise[d] the issue which is the subject of the lawsuit." *Id.* (citing *Maddox*, 655 F.3d at 722).

Here, Plaintiff's grievance plainly refers to a nurse failing to render adequate medical care during the January 31, 2020 incident. Plaintiff stated in the grievance, "[t]he nurse came and saw me through the door only but did not inspect my body up close for injury." Dkt. 51-4. In the "relief requested" section, Plaintiff also sought, among other things, "[t]o have proper medical treatment." *Id.* Furthermore, in the grievance officer's response, the grievance officer stated that the nature of the grievance was "PREA allegation/Staff Conduct/Medical Treatment." Dkt. 52-3. Cumulatively, the information provided by Plaintiff was sufficient to put Dixon officials on notice that the grieved-of issues included the medical care, or lack thereof, that he received, and allow Dixon officials to identify the nurse involved in the incident. As such, Plaintiff's failure to name Defendant Spencer in the grievance amounts to "a mere technical defect" not dispositive of the exhaustion issue. *Donald*, 2019 WL 2525856, at *5; *see also Span v. Chavez*, No. 15-cv-50063, 2018 WL 6046144, at *2 (N.D. Ill. Nov. 19, 2018); *Kyles*, 2017 WL 4122708, at *8.

## CONCLUSION

For these reasons, the Court finds that Plaintiff exhausted his administrative remedies to the extent they were available. It is this Court's Report and Recommendation that the case be allowed to proceed. Any objection to this Report and Recommendation shall be filed by the date set forth above. Failure to object may constitute a waiver of objections on appeal. *See Provident Bank*, 882 F.2d at 260.

Date: August 16, 2022

By: Lisa A. Jensen
United States Magistrate Judge